## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Gregory P. Bredlow, | Civil No. 15-3087 (DWF/JJK) |
| Plaintiff, | |
| v. | |
| CitiMortgage, Inc., Wilford, Geske & Cook, P.A., ATD Holdings, LLC, and Andrew T. Dibble, | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

_____

Plaintiff Gregory P. Bredlow, *Pro Se*.[1]

Cameron A. Lallier, Esq., and Thomas J. Lallier, Esq., Foley & Mansfield, PLLP, counsel for Defendant CitiMortgage, Inc.

Michael A. Klutho, Esq. and Uzodima F. Aba-Onu, Esq., Bassford Remele, PA, counsel for Defendant Welford, Geske & Cook, P.A.

Kelly Vince Griffitts, Esq., Griffitts Law Offices PLLC, counsel for ATD Holdings, LLC and Defendant Andrew T. Dibble.

_____

## INTRODUCTION

This matter is before the Court on a Joint Motion to Dismiss brought by

Defendants CitiMortgage, Inc. ("CMI"), Wilford, Geske & Cook ("WGC"), ATD

Holdings, LLC ("ATD"), and Andrew T. Dibble ("Dibble") (together, "Defendants")

---

[1]   Plaintiff had counsel when the present motions were briefed and argued to the Court.  On October 15, 2015, Plaintiff's counsel moved to withdraw without substitution of counsel, and on November 12, 2015, the Court granted the motion.  (Doc. Nos. 35, 42.)

(Doc. No. 8); and a Motion for Leave to File Second Amended Complaint brought by Plaintiff Gregory P. Bredlow ("Bredlow" or "Plaintiff") (Doc. No. 23).  For the reasons set forth below, the Court grants Defendants' motion to dismiss Counts I through V, as stated in the Amended Complaint; grants Bredlow's motion for leave to file his Second Amended Complaint; and remands Bredlow's remaining state law claim to state court.

## BACKGROUND

On or about March 6, 2003, Bredlow executed a promissory note, secured by a mortgage, for the purchase of real property located in Plymouth, Minnesota (the "Property").  (Doc. No. 1, Ex. 2 ("Am. Compl.") ¶ 23.)  The mortgage states that Citizens State Bank ("Citizens") is the lender, while Mortgage Electronic Registration Systems, Inc. ("MERS") is the mortgagee, "acting solely as a nominee for [Citizens] and [Citizen's] successors and assigns."  (*Id.* ¶ 24, Ex. A.)  The mortgage expressly authorizes MERS to "foreclose and sell the Property."  (*Id.*)  It also includes what appears to be a drafting error—namely, that "MERS is the *mortgage*," rather than "MERS is the *mortgagee*."  (*Id.* (emphasis added).)

On or about January 1, 2005, Principal Residential Mortgage, Inc. ("Principal"), the servicer of Bredlow's mortgage, merged with CMI, which thereafter became the servicer of the mortgage.  (*Id.* ¶ 25.)  On or about July 22, 2010, MERS assigned its interest in Bredlow's mortgage to CMI.  (*Id.* ¶ 26.)

Subsequently, Bredlow fell behind on payments on his mortgage loan.  (*Id.* ¶ 27.)  On or about October 27, 2014, CMI recorded its notice of pendency and power of attorney to foreclose on the Property through WGC.  (*Id.* ¶ 28.)  WGC, as power of

attorney for CMI, commenced foreclosure by advertisement on the Property. (*Id*. ¶ 29.)

On or about November 4, 2014, WGC served Bredlow with a Notice of Mortgage

Foreclosure Sale by way of a sheriff's sale scheduled for December 15, 2014. (*Id*. ¶ 30.)

On or about November 14, 2014, Bredlow provided information to, and requested

information from, ClearPoint Credit Counseling Solutions ("ClearPoint"). (*Id*. ¶ 31.)

ClearPoint is a third-party housing counselor, and Bredlow communicated with

ClearPoint regarding loss mitigation programs, including the federal Home Affordable

Modification Program ("HAMP"). (*Id*.) From December 8, 2014 through at least

December 12, 2014, Bredlow, through his authorized representative John Jacobsen

("Jacobsen"), engaged in direct discussions with CMI relating to a possible loan

modification. (*Id*. ¶ 33.) During these discussions, CMI requested additional

authorization from Bredlow to speak with Jacobsen about Bredlow's mortgage. (*Id*.

¶ 34.) On December 15, 2014, WGC advised Bredlow, through Jacobsen, that the

sheriff's sale of the Property had been postponed pending loan modification. (*Id*. ¶ 35.)

On January 15, 2015, CMI sent Bredlow a loan modification offer that included an

opportunity for Bredlow to enter into a Trial Period Plan. (*Id*. ¶ 36, Ex. C.) Jacobsen

contacted CMI to discuss loan modification, at which time CMI informed him that the

sheriff's sale of the Property had occurred as scheduled on December 15, 2014. (*Id.* ¶ 37,

Ex. D.) On or about January 15, 2015, Tiburon Homeowners Association, Inc.

("Tiburon") recorded an association lien against the Property, assigned its interest in the

lien to P.A.G., LLC ("P.A.G."), and recorded the assignment. (*Id.* ¶¶ 39, 40.) P.A.G., in

turn, recorded a notice of intent to redeem its interest in the lien, assigned its interest in

the lien to ATD, and recorded the assignment.  (*Id.* ¶¶ 41-42.)  On June 16, 2015, ATD

redeemed its interest in the lien as junior creditor.  (*Id.* ¶ 43.)  Dibble is the registered

agent and owner of ATD.  (*Id.* ¶ 21.)

On or about June 19, 2015, Bredlow filed an action in Hennepin County District

Court against CMI and WGC, asserting five claims:  (I)  violation of Minnesota's Dual

Tracking Statute, Minn. Stat. § 582.043; (II) violation of the federal Fair Debt Collection

Practices Act ("FDCPA"), 15 U.S.C §§ 1692-1692p; (III) violation of the Mortgage

Servicer Standards of Conduct, Minn. Stat. § 58.13; (IV) quiet title, under Minn. Stat.

§ 559.01; and (V) declaratory judgment, under Minn. Stat. § 555.01.  (Doc. No. 1

("Notice of Removal"); Doc. No. 1, Ex. 1 ("Compl.").)  Thereafter, on June 26, 2015,

ATD commenced an eviction action against Bredlow.  (Am. Compl. ¶ 45.)

On July 1, 2015, Bredlow filed an Amended Complaint, adding ATD and Dibble

as Defendants.  (Notice of Removal; Am. Compl.)  On July 17, 2015, Defendants

removed the lawsuit to this Court, and on July 24, 2015, they filed a joint motion to

dismiss the Amended Complaint.  (Doc. Nos. 1, 8.)

On September 4, 2015, Bredlow filed a motion for leave to file a second amended

complaint.  (Doc. No. 23.)  The proposed Second Amended Complaint adds allegations

that CMI participated in the federal Making Home Affordable program ("MHA") and,

accordingly, entered into servicer participation agreements ("SPAs") with the Federal

National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage

Corporation ("Freddie Mac").  (Doc. No. 26, Ex. 1 ("Proposed Second Am. Compl.")

¶¶ 2-4, 24-26, 32-42.)  It further alleges that CMI violated the SPAs by failing to respond

to Bredlow's request for a loan modification prior to the sheriff's sale. (*Id.* ¶¶ 59-67.) Violation of the SPAs, it alleges, constitutes an additional violation of the Mortgage Servicer Standards of Conduct, Minn. Stat. § 58.13, specifically subd. 1(a)(5). (*Id.* ¶¶ 96-117.) CMI opposes Bredlow's motion for leave to file the proposed Second Amended Complaint. (Doc. No. 29.)

## DISCUSSION

### I.    Defendants' Joint Motion to Dismiss

#### A.    Legal Standard

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court deciding a motion to dismiss may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative

level." *Id*. at 555.  As the United States Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]."  *Twombly*, 550 U.S. at 556.

**B.**      **Count I:  Violation of Minnesota's Dual Tracking Statute**

In Count I, Bredlow alleges that CMI violated Minnesota's Dual Tracking Statute, Minn. Stat. § 582.043, subd. 6, by failing to halt the sheriff's sale of the Property.  (Am. Compl. ¶¶ 47-52.)  Bredlow seeks relief under subdivision 6(c), which provides that a servicer must halt foreclosure proceedings to evaluate a timely loan modification application:

> (c) If the servicer receives a loss mitigation application after the foreclosure sale has been scheduled, but before midnight of the seventh business day prior to the foreclosure sale date, the servicer must halt the foreclosure sale and evaluate the application.  If required to halt the foreclosure sale and evaluate the application, the servicer must not move for an order of foreclosure, seek a foreclosure judgment, or conduct a foreclosure sale unless:
>
> (1) the servicer determines that the mortgagor is not eligible for a loss mitigation option, the servicer informs the mortgagor of this determination in writing, and the applicable appeal period has expired without an appeal or the appeal has been properly denied;
>
> (2) where a written offer is made and a written acceptance is required, the mortgagor fails to accept the loss mitigation offer within the time frame specified in the offer or within 14 days after the date of the offer, whichever is longer; or
>
> (3) the mortgagor declines a loss mitigation offer in writing.

Minn. Stat. § 582.043, subd. 6(c).

As a threshold matter under subdivision 6(c), Bredlow must sufficiently allege that the servicer, CMI, received Bredlow's loss mitigation application "before midnight of the seventh business day prior to the foreclosure sale date." (*Id*.)  That is, Bredlow must allege that CMI received a loss mitigation application on or before Thursday, December 4, 2014, which was the seventh business day prior to the Monday, December 15, 2014 sheriff's sale.  Bredlow's Amended Complaint fails to allege these facts.

Although Bredlow alleges that on or before November 14, 2014, CMI received, through ClearPoint, Bredlow's loss mitigation application, the facts included in the Amended Complaint do not support this conclusory allegation.  (*See* Am. Compl. ¶ 49.) Bredlow alleges only two specific facts regarding his efforts to obtain a loan modification from CMI:  (1) on or about November 14, 2014, Bredlow provided information related to loan modification to ClearPoint, a third-party credit counselor; and (2) from December 8, 2014 through December 12, 2014, Bredlow, through Jacobsen, engaged in discussions relating to loan modification with CMI.  (*Id.* ¶¶ 31, 33.)  Bredlow does not allege that ClearPoint provided any information—much less documents constituting a loan modification application—to CMI.  Further, he does not allege that either he or Jacobsen discussed loan modification with CMI on or before the December 4, 2014 deadline.  In short, Bredlow's Amended Complaint does not allege facts sufficient to establish that

CMI had an obligation, under subdivision 6(c), to stop the sheriff's sale of the Property. As such, the Court dismisses Count I.[2]

### C.   Count II:  Violations of the FDCPA

In Count II, Bredlow alleges that WGC violated various subsections of §§ 1692e and 1692f of the FDCPA.  Section 1692e prohibits a "debt collector" from using "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  (Am. Compl. ¶¶ 53-65.)  Bredlow alleges that WGC violated §§ 1692e(2), 1692e(5), and 1692e(10) by falsely assuring Bredlow that the sheriff's sale would be postponed and by foreclosing on the Property in violation of the Dual Tracking Statute.  (*Id.* ¶¶ 61-63.)

Section 1692f prohibits a "debt collector" from using "unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  Bredlow alleges that WGC violated § 1692f(1) by collecting a debt in a manner not permitted by law.  (Am. Compl. ¶ 64.)  He further alleges that WGC violated § 1692f(6) by using nonjudicial foreclosure when it had no right to possession of the Property and when the Property was exempt from foreclosure under the Dual Tracking Statute.  (Am. Compl. ¶¶ 59-60, 64.)

### 1.   Allegation That WGC Is a "Debt Collector"

To survive a motion to dismiss, Bredlow must sufficiently allege that WGC was a "debt collector" under the FDCPA and therefore subject to the FDCPA's prohibitions.  15

---

[2]   Because the Court finds that Bredlow fails to allege that CMI received Bredlow's loan modification application by the statutory deadline, the Court does not reach the parties' arguments regarding:  (1) whether Minn. Stat. § 582.043, subd. 7(b), required Bredlow to record a lis pendens within the statutory redemption period; and (2) the constitutionality of Minn. Stat. § 582.043, subd. 7(b).

U.S.C. §§ 1692e, 1692f; *Chomilo v. Shapiro, Nordmeyer & Zielke, LLP*, Civil No. 06-3103, 2007 WL 2695795, at *3 (D. Minn. Sept. 12, 2007). The FDCPA provides, in relevant part, that a "debt collector" is a person "in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect" debts owed to another. 15 U.S.C. § 1692a(6). It also provides: "*For the purpose of section 1692f(6) of this title*, [debt collector] also includes any person . . . in any business the principal purpose of which is the *enforcement of security interests*." *Id.* (emphasis added). Interpreting these provisions, *Chomilo* recognized that enforcers of security interests are "debt collectors" under § 1692f(6) only. *Chomilo*, 2007 WL 2695795, at *3; *see also, e.g.*, *James v. Ford Motor Credit Co.*, 47 F.3d 961, 962 (8th Cir. 1995) (repossession companies are not generally subject to the FDCPA); *Payne v. Reiter & Schiller, P.A.*, Civil No. 11-2067, 2012 WL 1054873, at *2 (D. Minn. Mar. 8, 2012) (enforcers of security interests are "debt collectors" only for § 1692f(6)), *adopted by* 2012 WL 1050013 (Mar. 28, 2012); *Gray v. Four Oak Court Ass'n, Inc.*, 580 F. Supp. 2d 883, 888 (D. Minn. 2008) (debt collector status of enforcers of security interests is limited to § 1692f(6)).

Here, Bredlow sufficiently alleges that WGC is an enforcer of security interests. With respect to WGC, Bredlow pleads four specific facts: (1) CMI authorized WGC to foreclose on the Property through a power of attorney; (2) WGC engaged in foreclosure by advertisement; (3) WGC served Bredlow with a Notice of Mortgage Foreclosure Sale that included an FDCPA disclaimer stating "THIS COMMUNICATION IS FROM A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT"; and (4) WGC falsely

advised Bredlow that the sheriff's sale of the Property would be postponed.  (Am. Compl. ¶¶ 28-30, 35.)  These factual allegations support the conclusion that WGC was attempting to dispossess Bredlow of secured property through foreclosure by advertisement and was, therefore, enforcing a security interest.  *See Chomilo*, 2007 WL 2695795, at *5.

Bredlow does not, however, sufficiently allege that WGC is in the business of collecting debts or that WGC regularly collects debts owed to another.  None of Bredlow's factual allegations supports a finding that WGC collected or attempted to collect the debt evidenced in the promissory note, as opposed to enforcing the mortgage securing the debt.  *See Gray*, 580 F. Supp. 2d at 888 (activities incident to enforcement of a security interest are not "debt collection" under the FDCPA); *Owens v. Hellmuth & Johnson, PLLC*, 550 F. Supp. 2d 1060, 1066 (D. Minn. 2008) (activities concerning security interest differ from activities concerning underlying debt).  Further, WGC's use of the FDCPA disclaimer does not provide conclusive evidence that WGC is a "debt collector" under all provisions of the FDCPA or estop WGC from arguing that it is not a "debt collector."  *See DeMoss v. Peterson, Fram & Bergman*, Civil No. 12-2197, 2013 WL 1881058, at *3 (D. Minn. May 6, 2013); *Chomilo*, 2007 WL 2695795, at *6.

In sum, Bredlow sufficiently alleges that WGC, as an enforcer of security interests, is a "debt collector" for the purpose of § 1692f(6) only.  Because Bredlow does not sufficiently allege that WGC is in the business of collecting debts or regularly collects debts, he does not sufficiently allege that WGC is a "debt collector" for the purpose of any other provision of the FDCPA.

## 2.      Allegation That WGC Violated § 1692f(6)

Section 1692f(6) applies to enforcers of security interests, like WGC, and it

prohibits:

> (6) Taking or threatening to take any nonjudicial action to effect
> dispossession or disablement of property if—
>
> > (A) there is no present right to possession of the property claimed as
> > collateral through an enforceable security interest;
> >
> > (B) there is no present intention to take possession of the property; or
> >
> > (C) the property is exempt by law from such dispossession or
> > disablement.

15 U.S.C. § 1692f(6).  Foreclosure by advertisement, pursuant to Minnesota law,

constitutes "nonjudicial action to effect dispossession or disablement of property."  *See*

Minn. Stat. §§ 580.01-580.30.  Thus, the question before the Court is whether Bredlow

sufficiently alleges that WGC violated §§ 1692f(6)(A) and 1692f(6)(C).[3]  (*See* Am.

Compl. ¶¶ 59-60.)

As to § 1692f(6)(A), Bredlow alleges that WGC lacked a "present right to

possession" of the Property when it initiated foreclosure proceedings.  (*Id.* ¶ 59.)  First,

Bredlow contends that WGC lacked a present right to possession of the Property because

CMI "did not have any rights in the Property" and therefore could not authorize WGC to

foreclose on the Property.  (Doc. No. 18 at 30.)  This argument turns on Bredlow's

allegation that Citizens, the lender, improperly assigned mortgagee rights to MERS, such

that MERS could not make a valid assignment of those rights to CMI.  (Am. Compl. ¶¶ 5,

---

[3]      Bredlow does not claim that WGC violated § 1692f(6)(B).

24.)  According to Bredlow, Citizens purported to assign rights to MERS—but in fact failed to do so—because the mortgage reads:  "MERS is the *mortgage* under this Security Instrument."  (*Id.* ¶ 24 (emphasis added).)

Bredlow's argument is unpersuasive.  "A court should look to state law requirements to determine whether there was a present right to possession under the FDCPA."  *Revering v. Norwest Bank Minn., N.A.*, Civil No. 99-480, 1999 WL 33911360, at *5 (D. Minn. Nov. 30, 1999).  Under Minnesota law, a court interpreting a contract (such as a mortgage) must attempt to determine the intent of the parties from the language of the contract in light of all of the contract's terms.  *E.g., Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 793 (8th Cir. 2014); *Residential Funding Co., LLC v. Terrace Mortg. Co.*, 725 F.3d 910, 916 (8th Cir. 2013).  Unless a contract's language is susceptible to more than one reasonable interpretation, the contract's construction and effect are questions of law.  *E.g., M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 877 (8th Cir. 2010) (applying Minnesota law).

Here, the terms of the mortgage, taken as a whole, evidence the parties' intention to grant MERS mortgagee rights under the mortgage.  Although the mortgage includes a drafting error—use of the word "mortgage" instead of "mortgagee" in one instance—the remainder of the document makes the parties' intention clear.  The mortgage states:  "[Bredlow] does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property . . . ."  (Am. Compl. ¶ 24, Ex. A.)  It also provides:  "[Bredlow] understands and agrees that . . . MERS (as nominee for Lender

and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property . . . ." (*Id.*)  As evidenced by these provisions, the Court concludes, as a matter of law, that the mortgage expressly grants MERS the right to initiate foreclosure proceedings.  Accordingly, the written terms of the mortgage do not provide a basis for claiming that WGC lacked a right to foreclose on the Property.

Second, Bredlow argues that WGC lost any "present right to possession" of the Property as soon as it advised Bredlow that the sheriff's sale had been postponed.  (Doc. No. 18 at 26.)  This argument also fails.  To begin, as explained above, the Court finds that Bredlow fails to sufficiently allege that CMI had an obligation to halt foreclosure proceedings under the Dual Tracking Statute.  As such, WGC did not lose its "present right to possession" of the Property through operation of that statute.

Further, WGC's alleged oral representation to Bredlow, that the sheriff's sale had been postponed, did not alter WGC's right to foreclose.  Under Minnesota law, "[a] debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor."  Minn. Stat. § 513.33, subd. 2.  The Eighth Circuit recognizes that an agreement to postpone a foreclosure sale is a "credit agreement" under this statute.  *Brisbin v. Aurora Loan Servs., LLC*, 679 F.3d 748, 752-53 (8th Cir. 2012).

Here, WGC's oral representation was not an enforceable agreement under Minn. Stat. § 513.33, subd. 2.  Taking Bredlow's factual allegations as true, the mortgage assigned mortgagee rights to MERS, which assigned its rights to CMI, which authorized

WGC, through a power of attorney, to foreclose on the Property.  To the extent that Bredlow alleges that WGC's oral representation was an agreement to postpone the foreclosure, such agreement had to be in writing to be enforceable.  Minn. Stat. § 513.33, subd. 2.  Because it was not, WGC's oral representation did not cause WGC to lose its "present right to possession."  As such, the Amended Complaint fails to allege any plausible basis for concluding that WGC lacked a "present right to possession" of the Property when it foreclosed on it.  The Amended Complaint fails to state a claim under § 1692f(6)(A).

As to § 1692f(6)(C), Bredlow alleges that WGC foreclosed on the property when the Property was "exempt under state law from such dispossession."  (Am. Compl. ¶ 60.) The Court assumes that Bredlow's allegation that the Property was "exempt under state law" refers to his allegation that the Dual Tracking Statute required CMI to halt the foreclosure proceedings but, as discussed above, Bredlow fails to state a claim under that statute.  Bredlow alleges no other facts plausibly supporting his claim that the Property was exempt from foreclosure.  As such, the Amended Complaint fails to state a claim under § 1692f(6)(C).  The Court dismisses Count II.

### D.  Count III:  Violation of Minnesota's Mortgage Servicer Standards of Conduct

In Count III, Bredlow alleges that CMI violated Minnesota's Mortgage Servicer Standards of Conduct, Minn. Stat. § 58.13.  (*Id.* ¶¶ 66-71.)  Minn. Stat. § 58.13, subd. 1(a), prohibits residential mortgage originators and servicers from engaging in twenty-seven specified types of conduct.  Two prohibitions are relevant here.  First,

Minn. Stat. § 58.13, subd. 1(a)(8) prohibits "violat[ing] any provision of any other applicable state or federal law regulating residential mortgage loans."  Second, Minn. Stat. § 58.13, subd. 1(a)(9) prohibits:

> mak[ing] or caus[ing] to be made, directly or indirectly, any false, deceptive, or misleading statement or representation in connection with a residential loan transaction including, without limitation, a false, deceptive, or misleading statement or representation regarding the borrower's ability to qualify for any mortgage product.

Under Minn. Stat. § 58.13, subd. 1(a)(9), "[a]llegations of false, deceptive, or misleading statements . . . are considered to be allegations of fraud and must be pled with particularity under Federal Rule of Civil Procedure 9(b)."  *Christensen v. PennyMac Loan Servs., LLC*, 988 F. Supp. 2d 1036, 1045 (D. Minn. 2013) (quoting *Doran v. Selene Fin., LP*, Civil No. 12-886, 2013 WL 53840, at *4 (D. Minn. Jan. 3, 2013)).  As such, plaintiffs must allege the "who, what, when, where, and how" of an alleged misrepresentation.  *Id.*

If an originator or servicer violates Minn. Stat. § 58.13, subd. 1(a)'s prohibitions, Minn. Stat. § 58.18, subd. 1, provides borrowers with a private right of action for, among other remedies, actual damages.  Significantly, the statute only provides a right of action for a "borrower *injured* by a violation."  Minn. Stat. § 58.18, subd. 1 (emphasis added).  Further, § 58.18, subd. 1's "inclusion of actual damages as the first available remedy implies that an element of a claim under § 58.13 is damages, or detrimental reliance."  *Winkler v. GMAC Mortg., LLC*, Civil No. 12-46, 2012 WL 1883916, at *4 (D. Minn. May 22, 2012).  Accordingly, to state a claim, a borrower must allege injury caused by the conduct of an originator or servicer.

Here, Bredlow alleges that CMI violated subdivision 1(a)(8) by violating Minnesota's Dual Tracking Statute.  (Am. Compl. ¶ 68.)  As previously noted, the Court finds that Bredlow fails to adequately allege that CMI violated the Dual Tracking Statute. Thus, Bredlow fails to state a claim under subdivision 1(a)(8).

Bredlow alleges that CMI violated subdivision 1(a)(9) by falsely representing that Bredlow was under consideration for a loan modification.  (*Id.* ¶ 70.)  Bredlow fails to state a claim under this provision for at least two reasons.  First, the Amended Complaint does not allege CMI's violation of subdivision 1(a)(9) with sufficient particularity. Instead, it largely parrots back the statutory language:  "[CMI] made direct and indirect false, deceptive, or misleading statements and representations in connection with a residential loan transaction, including the representation that Bredlow was under consideration for a loan modification, a residential loan transaction, and still foreclosed on the Property violating state law."  (*Id.*)  In support of this conclusory allegation, the Amended Complaint claims that CMI "represented to Bredlow that he was being considered for a loan modification" after Bredlow communicated with ClearPoint about loss mitigation programs.  (*Id.* at ¶¶ 31-32.)  It does not, however, explain with any particularity what representation was made, who made it, when it was made, or whether it was made orally or in writing.  In these circumstances, the Amended Complaint fails to meet Rule 9's heightened pleading standard for claims of misrepresentation.

Second, to the extent that Bredlow claims that CMI violated subdivision 1(a)(9) by sending Bredlow the January 15, 2015 loan modification offer, Bredlow fails to allege

that he was injured by CMI's conduct.[4]  The Amended Complaint does not allege that

Bredlow detrimentally relied upon the erroneous loan modification offer or otherwise

sustained any injury as a result of receiving it.  Because Bredlow does not sufficiently

allege that he is a "borrower injured by" the January 15, 2015 loan modification offer, the

Amended Complaint fails to state a claim under subdivision 1(a)(9).  Accordingly, the

Court dismisses Bredlow's claims under Minn. Stat. § 58.13, subd. 1(a)(8) and

subd. 1(a)(9).[5]

### E.    Count IV:  Quiet Title

In Count IV, Bredlow alleges that he is entitled to relief against CMI, ATD, and

Dibble under the doctrine of quiet title as codified at Minn. Stat. § 559.01.  (Am. Compl.

¶¶ 72-78.)  That statute provides:

> Any person in possession of real property personally or through the
> person's tenant, or any other person having or claiming title to vacant or
> unoccupied real property, may bring an action against another who claims
> an estate or interest therein, or a lien thereon, adverse to the person bringing
> the action, for the purpose of determining such adverse claim and the rights
> of the parties, respectively.

Minn. Stat. § 559.01.  "In order to survive a Rule 12(b)(6) motion, a complaint must

plead adequate facts to establish a plausible 'claim that the defendants' adverse claims

are *invalid*.'"  *Gharwal v. Fed. Nat'l Mortg. Ass'n*, Civil No. 13-0685, 2013

---

[4]    For this analysis, the Court assumes—but does not decide—that the January 15, 2015 loan modification offer, which CMI subsequently rescinded, was a false or misleading representation that falls within subdivision 1(a)(9).

[5]    Because the Court grants Bredlow's motion to file the proposed Second Amended Complaint, the Court does not dismiss Count III in its entirety.  The proposed Second Amended Complaint asserts a violation of Minn. Stat. § 58.13, subd. 1(a)(5), a different prohibition under the Mortgage Servicer Standards of Conduct.

WL 4838904, at *2 (D. Minn. Sept. 11, 2013) (quoting *Karnatcheva v. JPMorgan Chase Bank, N.A.*, 704 F.3d 545, 548 (8th Cir. 2013)).

The basis for Bredlow's quiet-title claim is the foreclosure on the Property by CMI and WGC, which, Bredlow alleges, violated the Dual Tracking Statute.  (Am. Compl. ¶¶ 74-77.)  Because the foreclosure was invalid, Bredlow claims, CMI, ATD, and Dibble lack a valid interest in the Property.[6]  (*Id.*)  As previously noted, the Court finds that Bredlow fails to state a claim under the Dual Tracking Statute.  As such, violation of that statute does not constitute a plausible basis for a quiet-title claim.  The Court dismisses Count IV.

### F.    Count V: Declaratory Judgment

In Count V, Bredlow claims that he is entitled to a declaratory judgment under Minn. Stat. § 555.01.  (*Id.* ¶¶ 79-87.)  To begin, Bredlow is mistaken that Minn. Stat. § 555.01 provides the Court with authority to issue declaratory judgments; rather, the federal Declaratory Judgment Act, 28 U.S.C. § 2201, grants the Court such authority. *See Fid. Nat'l Title Ins. Co. v. Captiva Lake Invs., LLC*, 788 F. Supp. 2d 970, 973 (E.D. Mo. 2011).  Regardless, under both state and federal law, a declaratory judgment is a remedy, not a cause of action.  *E.g., Wolff v. Bank of N.Y. Mellon*, 997 F. Supp. 2d 964, 979 (D. Minn. 2014); *Onvoy, Inc. v. ALLETE, Inc.*, 736 N.W.2d 611, 617-18 (Minn.

---

[6]    Although Bredlow claims that CMI and Dibble each have an adverse interest in the Property (Am. Compl. ¶¶ 74-77), the facts alleged do not support this conclusion. Namely, Bredlow alleges that ATD, as a junior lienholder, redeemed title to the Property. (*Id.* ¶¶ 39-46.)  Once ATD redeemed, CMI's rights were extinguished.  *See* Minn. Stat. §§ 580.24-580.27.  Bredlow alleges no facts supporting his allegation that Dibble has an interest in the Property.

2007).  Because the Court finds that the Amended Complaint fails to state a substantive claim, there is no legal basis for a declaratory judgment.  The Court dismisses Count V.

## II.    Bredlow's Motion to File a Second Amended Complaint

### A.    Legal Standard

Under Federal Rule of Civil Procedure 15, a court has discretion to grant a plaintiff leave to amend a complaint and "should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2); *Friedman v. Farmer*, 788 F.3d 862, 869 (8th Cir. 2015).  Still, a court should not grant leave to amend when the proposed amendment would be futile.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Sorace v. United States*, 788 F.3d 758, 768 (8th Cir. 2015).  Futility exists when the proposed amended complaint could not withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 781-82 (8th Cir. 2008).  As such, a plaintiff seeking leave to amend his complaint must support his claim with "enough facts to state a claim to relief that is plausible on its face" and enough specificity "to raise a right to relief above the speculative level."  *See Twombly*, 550 U.S. at 555, 570.

### B.    Allegation That CMI Violated Minn. Stat. § 58.13, subd. 1(a)(5)

Bredlow seeks leave to file the proposed Second Amended Complaint alleging that CMI violated Minn. Stat. § 58.13, subd. 1(a)(5).  (Proposed Second Am. Compl. ¶¶ 96-117.)  Under that statute, a residential mortgage originator or servicer must not "fail to perform in conformance with its written agreements with borrowers, investors, other licensees, or exempt persons."  Minn. Stat. § 58.13, subd. 1(a)(5).  In support of his

claim, Bredlow seeks to add allegations that, by failing to respond to Bredlow's loan modification requests, CMI failed to perform in conformance with SPAs that it had with "exempt persons" Fannie Mae and Freddie Mac.  (Proposed Second Am. Compl. ¶¶ 2-4, 24-26, 32-42, 59-67, 96-117.)

The Minnesota Supreme Court recognizes that Minn. Stat. § 58.18, subd. 1, provides a private right of action for damages to a borrower injured by a servicer's violation of a written agreement with a third party.  *Gretsch v. Vantium Capital, Inc.*, 846 N.W.2d 424, 429-30 (Minn. 2014).  Specifically, the *Gretsch* court found that a mortgagor had standing to sue a mortgagee where the mortgagor alleged that the mortgagee violated an SPA with Fannie Mae by allowing mortgage foreclosure proceedings without responding to the mortgagor's request for a HAMP loan modification.  *Id.* at 427-28.  In light of *Gretsch*, the Court cannot conclude that Bredlow's Second Amended Complaint would be futile.  The Court will permit Bredlow to file his Second Amended Complaint asserting a claim against CMI under Minn. Stat. § 58.13, subd. 1(a)(5).

## C.     Remand of Bredlow's Claim Under Minn. Stat. § 58.13, subd. 1(a)(5)

Although the Court grants Bredlow leave to file a claim under Minn. Stat. § 58.13, subd. 1(a)(5), the Court will remand that claim to state court.  In this case, the Court exercises original jurisdiction over Bredlow's FDCPA claims, which arise under federal law, under 28 U.S.C. § 1331.  The Court exercises supplemental jurisdiction over Bredlow's remaining claims, which arise under state law, under 28 U.S.C. § 1367.  Under § 1367, however, the Court may decline to exercise supplemental jurisdiction over

Bredlow's remaining state claim now that it has dismissed Bredlow's federal claim.  28 U.S.C. § 1367(c); *Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 749 (8th Cir. 2009). The Court considers "factors such as judicial economy, convenience, fairness and comity."  *Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1249 (8th Cir. 2006).  If the Court declines supplemental jurisdiction, the Court may either dismiss Bredlow's state claim without prejudice, or it may remand the claim to state court.  *Glorvigen*, 581 F.3d at 749; *St. John v. Int'l Ass'n of Machinists & Aerospace Workers, Local 1010*, 139 F.3d 1214, 1217 (8th Cir. 1998).

In light of judicial economy, convenience, fairness, and comity in this case, the Court will remand Bredlow's claim under Minn. Stat. § 58.13, subd. 1(a)(5), to state court.  Bredlow originally selected state court, before Defendants removed the case to federal court.  And, although Bredlow's claim involves a federal program, it is essentially a breach-of-contract claim (a claim which arises under state common law), and state statutory law provides the relevant private right of action.  Accordingly, remand is appropriate.

## CONCLUSION

Because Bredlow has failed to allege facts that plausibly establish any of the claims alleged in the Amended Complaint, the Court will dismiss these claims.  The Court will, however, permit Bredlow to file the Second Amended Complaint, which asserts a claim against CMI under Minn. Stat. § 58.13, subd. 1(a)(5).  The Court will remand this remaining claim to Hennepin County District Court.

## ORDER

Based upon the parties' submissions and arguments, and for the reasons set forth above, **IT IS HEREBY ORDERED** that:

1.       Defendants' Joint Motion to Dismiss (Doc. No. [8]) is **GRANTED** to the extent Defendants request dismissal of the claims in Bredlow's Amended Complaint.

2.       All claims asserted in Bredlow's Amended Complaint (Doc. No. [1], Ex. 2) are **DISMISSED WITH PREJUDICE**, except that Bredlow will be permitted to file the Second Amended Complaint asserting a claim against CMI under Minn. Stat. § 58.13, subd. 1(a)(5).

3.       Bredlow's Motion for Leave to File Second Amended Complaint (Doc. No. [23]) is **GRANTED**.  Bredlow will be permitted to file the Second Amended Complaint asserting a claim against CMI under Minn. Stat. § 58.13, subd. 1(a)(5).  No claims remain against WGC, ATD, and Dibble.

4.       The Court will remand Bredlow's claim under Minn. Stat. § 58.13, subd. 1(a)(5), to Hennepin County District Court.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  January 26, 2016                     s/Donovan W. Frank
                                                            DONOVAN W. FRANK
                                                            United States District Judge